**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Robert L. Wriston, | ) | CASE NO. 1: 12 CV 723 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Village of LaGrange, *et al.*, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

This removed Section 1983 is before the Court upon defendants' motion for summary judgment. (Doc. 17) For the reasons stated below, the motion is granted.

**Facts**

This case pertains to a traffic stop and subsequent arrest of plaintiff, Robert L. Wriston, in the Village of LaGrange, Ohio on March 1, 2011, for driving under the influence of alcohol and resisting arrest. The individual defendants in the case are the LaGrange police officers who stopped and arrested plaintiff, Wayne Ramsey, Joseph Killiany, and Michael Savetski, and LaGrange Police Chief Daniel Moore. At the time of the pertinent events, Officers Ramsey and Savetski were full time patrol officers. Officer Killiany was a "special officer" in training with Officer Ramsey.

1

On March 1, 2011, Officer Ramsey observed plaintiff operating his vehicle and "weaving" on East Main Street in LaGrange, and Ramsey followed. According to Ramsey, as plaintiff turned right onto Railroad Street, plaintiff began "ducking into driveways." After Ramsey would drive by a driveway in which plaintiff pulled his vehicle, plaintiff would then back out of the driveway and then continue driving down the street. When plaintiff pulled into the driveway at 146 Railroad Street, Ramsey followed plaintiff and activated the light bars on his police cruiser. This activated a dashboard camera in the cruiser. Plaintiff testified that he pulled into different driveways of people he knew looking for a place to stop because he knew the police were trying to follow him for DUI even though he was not drunk. His friend had a body shop at the location where he was stopped.

When he pulled into this driveway, plaintiff put his vehicle in park, turned off the ignition, opened the driver side door, and got out of his vehicle. Ramsey approached plaintiff's vehicle and instructed plaintiff to remain in the vehicle and leave the vehicle off. Plaintiff complied with this instruction and got back into his car. Officer Killiany approached the passenger side of the vehicle.

Upon approaching the vehicle, Officer Ramsey smelled the strong odor of alcohol. Officer Savetski then arrived in a separate cruiser and joined Officer Killiany on the passenger side of plaintiff's car. Officers Ramsey and Killiany walked away from plaintiff's vehicle. The officers testified that at this point they had obtained plaintiff's driver's license. While the officers were away from plaintiff's vehicle with plaintiff's license, plaintiff opened the driver side door of the vehicle again despite having been told by Ramsey to stay in the vehicle. Officer Ramsey again ordered plaintiff to remain in his vehicle. Plaintiff shut the

door. The officers testified that plaintiff started his vehicle again. Officer Savetski testified that he believed he observed plaintiff's foot on the brake and hand on the shift lever.

At this point, Officer Ramsey rushed back to the vehicle, told plaintiff he was under arrest, and removed plaintiff from the vehicle. Plaintiff was removed from his vehicle by the officers and placed in a prone position on the ground and was handcuffed. All three of the officers assisted in removing and restraining plaintiff, and Officer Savetski applied the handcuffs. Plaintiff was placed under arrest, read his rights, and transported in Ramsey's cruiser to the State Highway Patrol post for breath testing. Plaintiff consented to undergo breath testing.

A microphone was activated in the police cruiser during plaintiff's arrest and transport. As recorded, the following conversation occurred in the cruiser between Ramsey and plaintiff.

> Officer Ramsey: Once again, do you want me to put another set of cuffs on you to give you a little more –
>
> Plaintiff: It don't matter. Whatever you want to do.
>
> Officer Ramsey: You tell me.
>
> Plaintiff: It hurts.
>
> Officer Ramsey: You tell me.
>
> Plaintiff: It hurts buddy, it hurts. Whatever you want to do for me is up to you.

Ramsey did not take any action with respect to plaintiff's handcuffs. Before leaving in the cruiser, however, Ramsey inquired of plaintiff again, "are you alright now?" Plaintiff responded, "I guess I am."

3

When the cruiser began to move, plaintiff sighed or grimaced, and the following exchange occurred:

Officer Ramsey: What hurts?

Plaintiff: My wrist.

Officer Ramsey: Well I asked you if you wanted me to help you out there, and you said do whatever you want to do.

Plaintiff: I want to get my vehicle sent to the body shop, that's what I want to do.

The police cruise kept moving, but Officer Ramsey asked plaintiff how he was feeling and the plaintiff said, "fine." During the transport, Officer Ramsey also inquired of plaintiff as to whether plaintiff had someone to come pick him up later. Officer Killiany also inquired about plaintiff's condition during the transport.

This incident resulted in plaintiff being convicted of driving under the influence of alcohol. This was plaintiff's fifth DUI conviction.

Plaintiff submits medical records pertaining to an emergency room visit he made hours after his release from the Lorain County Jail indicating that he suffered a contusion (deep bruise) and a sprained wrist and that he had complained to emergency room personnel of elbow and rib pain.

Plaintiff filed this lawsuit on February 22, 2012, alleging causes of action against the individual arresting officers (Ramsey, Killiany, and Savetski) pursuant to 28 U.S.C. §1983 for the use of unreasonable and excessive force in arresting him (count II)[1] and the denial of his right as a pretrial detainee to medical care for the injuries he sustained (count III). He alleges

---

[1] The complaint does not allege a "Count I."

a cause of action against Police Chief Daniel Moore under Section 1983 for failing to properly train and supervise the arresting officers resulting in the deprivation of his constitutional rights (count V) and a cause of action against the Village of LaGrange and the LaGrange Police Department for "establish[ing and] acquiesc[ing] to a custom or practice that resulted in the use of excessive force and denial of medical care" (count IV). Finally, plaintiff alleges state law causes of action against the arresting officers for civil battery (count VI) and civil assault (count VII), as well as a state law cause of action that "[d]efendants' actions constitute a violation of Ohio's Constitution and Laws" (count VIII).

**Standard of Review**

Federal Rule of Civil Procedure 56 governing summary judgment provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual

5

dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986). In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255.

**Discussion**

**Excessive Force**

The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers. *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). To determine whether a constitutional violation based on excessive force has occurred, courts apply an "objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (citations omitted). "The calculus of reasonableness [regarding an officer's use of force] must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*, *citing Graham v. Connor*, 490 U.S. 386, 396-97 (1989). Relevant considerations to be taken into account in determining whether a use of force was reasonable and not excessive include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* This standard

contemplates "a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002).

The Sixth Circuit has acknowledged that "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Fettes v. Hendershot*, No. 08-4419, 2010 WL 1687727, at * 4 (6th Cir. Apr. 27, 2010). "Not all allegations of tight handcuffing, however, amount to excessive force." *Id.* "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Id*.

Furthermore, qualified immunity generally shields government officials from civil liability in the performance of their discretionary functions, including the function of effectuating an arrest and handcuffing an arrestee, so long as the conduct involved does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Generally qualified immunity applies "unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful." *Id.*, at *3.

The Sixth Circuit has explained that while "a generalized right to be free from unduly tight handcuffing is 'clearly established,'" "a more particularized inquiry" is necessary in determining whether the officer is entitled to qualified immunity in an excessive force claim based on handcuffing. An officer may be liable for excessively forceful handcuffing only if

7

"it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*., at \*5. In *Fettes*, the Sixth Circuit reversed a denial of summary judgment on a claim of excessive force and held that the arresting officers were entitled to qualified immunity. The plaintiff in *Fettes* told the officer who arrested him that his handcuffs were "much too tight and that they were hurting him," and he subsequently told the officer several more times that his handcuffs were hurting him. Each time, the arresting officer responded to the plaintiff, "Well, you don't have long, Bub. We only have a 10–minute drive" to the police station. On these facts, the Sixth Circuit held that the district court erred in failing to find that the arresting officers were entitled to qualified immunity, holding that "a reasonable officer would not know that the failure to respond to a complaint about tight handcuffs during a ten-minute ride to the police station violates the Constitution." The Sixth Circuit ruled:

> Our precedents fail to notify officers that any response to a complaint of tight handcuffing other than an immediate one constitutes excessive force. Indeed, a constitutional requirement obligating officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are "too tight" is neither reasonable nor clearly established. Here, the short duration of the trip, adherence to police handcuff protocol, and absence of any egregious, abusive, or malicious conduct supports the reasonableness of the officers' conduct. Moreover, unlike other cases in which we have denied qualified immunity, the officers here acted without malice and with reason- they declined to loosen the handcuffs in light of the short, ten-minute transport to the police station.
>
> At the very worst, the decision not to pull over the vehicle and readjust Fettes's handcuffs during the ten-minute trip to the station falls in the "hazy border between excessive and acceptable force" along which qualified immunity operates to shield officers from discretionary, on-the-spot judgments.

*Id.*, at \*5.

Defendants contend they are entitled to summary judgment on plaintiff's excessive

8

force claim, contending that the video/audio evidence in this case demonstrates that they did not use excessive force in effectuating plaintiff's arrest, either by physically removing plaintiff from his vehicle or by handcuffing him. Defendants contend they made a reasonable decision to physically remove plaintiff from his vehicle after plaintiff disobeyed Officer Ramsey's instructions by opening the door to and restarting his car. They also contend that they did not use excessive force in applying plaintiff's handcuffs or in failing to replace or adjust the handcuffs during plaintiff's arrest and transport in light of the fact that plaintiff did not specifically complain about the handcuffs and failed to clearly respond to Officer Ramsey about what he wanted Officer Ramsey to do regarding his wrist.

With respect to the physical removal of plaintiff from his vehicle, defendants point out that the videotape of the incident reveals that they did not push, kick, shove or hit the plaintiff; rather, they exerted such force as was necessary to remove the plaintiff -- who was not cooperative – from his vehicle. Defendants also argue that plaintiff has not come forward with evidence sufficient to establish the requirements for excessively forceful handcuffing. They argue that the evidence shows that plaintiff complained only that his wrist hurt (not specifically that his handcuffs were too tight) and that Officer Ramsey did not ignore plaintiff's complaints but asked plaintiff what he wanted him (Ramsey) to do. The plaintiff did not provide Ramsey with an affirmative response.

Further, defendants argue that even if the evidence were sufficient to support an excessive force violation, Officer Ramsey, like the arresting officers in *Fettes*, is entitled to qualified immunity because his conduct was objectively reasonable under the circumstances. Specifically, in light of plaintiff's failure to provide Officer Ramsey an affirmative response

9

as to what he wanted with respect to his handcuffs and the short ride involved, a reasonable officer in Officer Ramsey's position would not have believed that he was violating plaintiff's rights.

Plaintiff, on the other hand, contends that there is sufficient evidence of excessive force and that reasonable officers in defendants' positions would have known that they were violating plaintiff's rights by "pulling him out of [his] car, ignoring [his] complaints about injuries and his wrists, and failing to check [his] handcuffs for tightness." (Pltf. Opp. at 18.) In addition, plaintiff contends there are genuine issues of material fact as to whether the officers reasonably believed he was attempting to flee when he turned on his vehicle after being instructed not to do so. He asserts that he was not attempting to move his vehicle but was "simply turning the car on." He asserts that there were "a number of more likely reasons [that he restarted] the vehicle," including that "it was very cold and [that plaintiff] could have turned the car on to warm up as he waited." (Pltf. Opp. at 10.) Plaintiff contends the officers' rendition of the events leading up to the incident, and the circumstances as set forth in the police incident report, are not credible. He contends that, contrary to the arresting officers' version of the facts, his foot was "off of the brake pedal prior to Officer Ramsey running to the driver's side door and yanking [him] out." (Pltf. Opp. at 15.) And he disputes that he had reached for the shift lever in his vehicle as Officer Savetski maintained. According to plaintiff, a reasonable officer would not have believed under the circumstances that he was attempting to flee or to use his vehicle as a weapon.

Regarding handcuffing, plaintiff contends the defendant officers should have known they were violating his constitutional rights because the officers did not follow proper

10

procedure and check plaintiff's handcuffs for tightness when the handcuffs were placed on him.  (*See* Pltf. Opp. at 13-14.)

Defendants are entitled to summary judgment on plaintiff's excessive force claim.  A review of the videotape is consistent with defendants' contention that unreasonable force was not used by the defendant police officers in removing plaintiff from his vehicle.  The videotape of the incident shows that the plaintiff – though not violently combative – nevertheless was uncooperative with the police and resisted their efforts to remove him from his vehicle and handcuff him.  As depicted on the videotape, Officer Ramsey used his knee and arms to create leverage to push the plaintiff onto his stomach and then gained control of his arm so that another officer (Savetski) could apply the handcuffs to him.  The arresting officers did not club, kick, or punch plaintiff in any way or exert gratuitous force against him.  While the officers exerted force,  it was not an extreme or even very high level of force under the circumstances.  The force was reasonable under the circumstances in light of plaintiff's lack of physical cooperation.[2]

The Court moreover agrees with defendants that the Sixth Circuit's reasoning in *Hayden v. Green*, 640 F.3d 150 (6th Cir. 2011) is instructive and applies here.  In *Green*, a defendant police officer placed his police cruiser next to a vehicle that had been described to

---

[2]

As defendants point out, plaintiff also appears to challenge the officers' basis for stopping him in the first place in his opposition brief, disputing for example Officer Ramsey's position that plaintiff was "weaving" in his car.  However, plaintiff's contentions in this regard are not relevant and will not be considered as plaintiff has not asserted a Fourth Amendment claim challenging the stop in his case.  The only constitutional claims alleged in plaintiff's complaint are that the officers used excessive force against him during his arrest and transport and for the denial of custodial medical care.

him as involved in a hit and run accident.  A videotape of the incident showed that after the officer lit up his rollers, the driver of the vehicle continued moving forward and then went partially up onto a curb as if to attempt to go around the cruiser rather than stop his vehicle.  In response, the officer quickly backed up his cruiser to block the lane and then exited his vehicle, opened the driver's side door of the vehicle, grabbed the driver, yanked his clothing, and pulled him from the seat to the ground in one fluid motion.  This injured the driver's back and shoulder.  The driver subsequently sued the officer for excessive force, but the Sixth Circuit held that the officer's actions fell within the measure of deference accorded to officers for on-the-spot judgments regarding the level of force necessary in given confronted circumstances.  The court reasoned:

> Green had ample reason to believe that Hayden's [the driver's] vehicle was the one that had left the accident scene. . . . The record shows that Green then initiated a calibrated escalation of force.  First, he lit up the rollers and partially blocked the roadway.  Virtually any law-abiding driver would have simply stopped his vehicle at that point, but the video shows that Hayden chose otherwise.  Instead, he tried to drive his Plymouth around Green's vehicle . . . .
>
> By then, Green could reasonably believe that Hayden was the hit-and-run suspect who had refused to stop his vehicle despite a police officer's obvious indication that he should.  So Green escalated his use of force.  The escalation was modest:  Green did not ram Hayden's vehicle or point a firearm at him.  What he did, instead, was use the force necessary to get Hayden out of the car.  Given the circumstances that Green then faced, that was an eminently reasonable decision.  The decision was reasonably executed as well.  Green did not follow Hayden down to the pavement with his own body, so as to crush him, or pummel, kick, or knee Hayden once he got there.  He simply pulled Hayden from seat to ground without piling on.  Green used the minimum force necessary to remove Hayden forcibly from the vehicle.

*Id*. at 153-54.

The court's reasoning in *Green* is applicable to the facts here.  Once Officer Ramsey stopped plaintiff and walked away from plaintiff's vehicle toward his police cruise with

12

plaintiff's driver's license, a law-abiding driver would have waited in his vehicle until he received further instruction from police officers. He would not have opened the door to his vehicle, or restarted his vehicle, as the videotape in this case undisputably shows that plaintiff did. Once plaintiff acted in this manner, it was not unreasonable for Officer Ramsey to have concluded that plaintiff was attempting to flee, or intending to attempt to flee, such that Officer Ramsey reasonably escalated the force used against plaintiff at that point by rushing back to plaintiff's vehicle and forcibly removing him from his vehicle. And, as in *Green*, the level of force the arresting officers exerted upon plaintiff (as depicted on the videotape) was reasonable under the circumstances. The videotape reveals that plaintiff was not physically cooperative with the officers' efforts to remove him from his vehicle; thus, the measure of force used against him was not unreasonable. Further, the videotape does not indicate that any gratuitous force was used. None of the officers punched, kicked, or brandished a weapon against plaintiff. The officers used a measure of force necessary to accomplish the task of quickly removing plaintiff from his vehicle and applying handcuffs to him.

     The Court also agrees with defendants that they are entitled to summary judgment on plaintiff's excessive force claim to the extent it is premised on excessively forceful handcuffing. Plaintiff contends that the officers did not follow the appropriate police procedures to ensure that his handcuffs were not too tight prior to double locking them. But as set out above, the Sixth Circuit has held that not all allegations of tight handcuffing amount to "excessive force." In order to survive summary judgment on an excessive force claim, a plaintiff must show that he complained that his cuffs were too tight and that the officers involved "ignored" his complaints. Further, the Sixth Circuit has held that the Constitution

13

does not require "officers to stop and investigate each and every utterance of discomfort and make a new judgment as to whether the handcuffs are 'too tight.'" *Fettes*, 2010 WL 1687727, at * 4-5.

The plaintiff cannot survive summary judgment on his excessive force handcuffing claim because even if the evidence is viewed in the light most favorable to him, he cannot show that Officer Ramsey "ignored" his complaints. Rather, Officer Ramsey acknowledged plaintiff's complaints and asked plaintiff several times what was wrong and what plaintiff wanted Ramsey to do. Plaintiff did not provide Ramsey with a definitive response in that regard. Even assuming it can be said that Officer Ramsey should have known that plaintiff was complaining about tight handcuffs, plaintiff's ambivalent complaints and responses were not sufficient to put Ramsey on notice that tightness of the cuffs was an urgent concern of plaintiff's.

Further, even assuming that the evidence were sufficient to support an excessive force handcuffing violation, Officer Ramsey is entitled to qualified immunity. A reasonable police officer in the circumstances Officer Ramsey confronted (in which the plaintiff complained about wrist pain but did not clearly respond to him about what plaintiff wanted him to do) would not have known that he was violating plaintiff's constitutional rights against excessive force. This Court finds that, as in *Fettes*, Officer Ramsey did not violate clearly established law in failing to take immediate action with respect to plaintiff's complaints of wrist pain by immediately checking or adjusting plaintiff's handcuffs. *See Fettes*, 2010 WL 1687727, at * 5. In sum, qualified immunity shields Officer Ramsey from his discretionary, on-the-spot decision not to check or readjust plaintiff's handcuffs in response to plaintiff's complaints that

14

his wrists hurt.

For all of the reasons discussed above, defendants are entitled to summary judgment on plaintiff's excessive force claim.

**Denial of Custodial Medical Care**

Plaintiff's second federal constitutional claim is for the denial of custodial medical care. The Eighth Amendment forbids prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004). This same protection is afforded pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Id.*

A constitutional claim for denial of medical care has both objective and subjective components. The deprivation alleged must be an objectively "serious medical need." And the official responsible for the deprivation must have exhibited a subjectively culpable state of mind – deliberate indifference – in denying the plaintiff medical care. *See Farmer v. Brennan,* 511 U.S. 825, 835 (1994). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. To show the necessary culpable subjective state of mind, a plaintiff must show both that the official was aware of facts from which an inference of a substantial risk of serious harm can be drawn and that the official drew that inference. Negligence on the part of the official is not sufficient. *Id.*

Defendants contend they are entitled to summary judgment on plaintiff's

15

constitutional claim for denial of medical care because plaintiff cannot demonstrate either the necessary objective or subjective component.  They argue that plaintiff cannot establish the objective component, that he suffered from a serious medical need, because plaintiff concedes that he never requested medical attention and there were was no obvious evidence of such a need.  They argue that plaintiff did not exhibit any outward obvious signs of a serious medical condition, such as bleeding or a protruding bone, and they assert that the "[d]iscomfort associated with sitting in the back of a police car with hands cuffed behind the back is not so unusual that a lay person would recognize a need for immediate medical attention."  (Def. Mem. at 14.)  Further, they argue that plaintiff did not submit any medical evidence demonstrating that he suffered a serious medical ramification caused by a delay in receiving medical care.³  In addition, defendants argue that there is insufficient evidence to establish a culpable state of mind on the part of Officer Ramsey.

Plaintiff contends in his opposition brief that his injuries were so obvious that a lay person would have recognized his need for medical care, asserting that: (1) he "consistently complained about hurting, especially his wrist injury"; (2) "any layperson or reasonable officer would recognize" that the level of force exerted against him (a 62 year old man) by the arresting officers was "likely to cause individual injury"; and (3) the arresting officers repeatedly asked him if he was ok.  According to plaintiff, this demonstrates that "the officers knew that [plaintiff] was injured or likely injured, otherwise why would multiple officers, on

---

³

A non-obvious need for medical care can satisfy the "serious medical need" requirement of a deliberate indifference claim, but to show this the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

16

multiple occasions be asking [him] if he was ok . . .?"  (Pltf. Opp. at 19.)  Regarding the subjective component of a deliberate indifference claim, plaintiff does not point to any specific evidence in the record but asserts that the defendant officers were "willfully and intentionally indifferent" to his injuries because they did not express "appropriate concern" for him and "chose to do nothing" in response to his complaints of pain.

The Court agrees with defendants that plaintiff has failed to come forward with sufficient evidence to demonstrate a viable deliberate indifference claim.  The Court agrees with defendants that the evidence is insufficient for a reasonable jury to conclude that plaintiff had an "objectively" serious medical need even when the evidence is viewed in the light most favorable to the plaintiff.  The only evidence of plaintiff's condition that defendants had was plaintiff's complaints of pain made during plaintiff's arrest and transport.  This evidence was that plaintiff complained several times about pain in his wrists but did not respond definitively to Officer Ramsey when he asked plaintiff what he wanted Ramsey to do for him, and he later told Ramsey in the police cruiser that he was "fine" and simply wanted to get his vehicle to the body shop.  This evidence is insufficient to demonstrate that plaintiff's sprained and bruised wrist was objectively so obvious that even a lay person would recognize that plaintiff had a serious need for medical care.

Even assuming plaintiff's sprained and bruised wrist was obvious so as to satisfy the objective component of a deliberate indifference claim, there is insufficient evidence to support a reasonable finding that the defendant officers were "deliberately indifferent" to plaintiff's medical needs.  The evidence is insufficient to show that Officer Ramsey – or any of the other arresting officers – actually knew or drew an inference that plaintiff's wrist was

17

seriously injured or actually sprained yet failed to respond.  The subjective component of a constitutional claim for deliberate indifference cannot be established because there is no evidence from which a reasonable jury could find that the arresting officers actually knew or drew an inference that plaintiff was suffering from a substantial risk of serious harm rather than simply complaining generally about the discomfort associated with being handcuffed.  As defendants point out, plaintiff never asked for medical assistance or specifically asked them to remove or adjust his handcuffs although he could have done so in response to Officer Ramsey's questioning.  Plaintiff complains that the officers chose to do nothing in response to his complaints of pain and did not exhibit appropriate concern for him.  At the most, this demonstrates that the officers acted negligently.  But this is insufficient to show that they were "deliberately indifferent" to obvious medical needs.

For the reasons stated above, defendants are entitled to summary judgment on plaintiff's constitutional claim alleging deliberate indifference.

**Counts IV and V**

Because plaintiff's federal constitutional claims of excessive force and denial of medical care as alleged in Counts II and III against the individual arresting officers fail for the reasons discussed above, plaintiff's alleged Counts IV (alleging municipal liability against the Village of LaGrange and the LaGrange Police Department) and V (alleging failure to train and supervise against Police Chief Moore) fail as a matter of law as well.  Count V fails because "a prerequisite of supervisory liability under §1983 is unconstitutional conduct by a subordinate."  *McQueen v. Beecher Cty. Schools*, 433 F.3d 460, 470 (6th Cir. 2006).  Likewise, count IV fails because in order to prevail on a claim against municipal defendants

18

under §1983, a plaintiff must demonstrate the deprivation of a constitutional right.  *See Howard v. City of Girard,* 346 Fed. Appx. 49, 51 (6th Cir. 2009).  In that plaintiff has failed to demonstrate a viable constitutional claim, defendants are entitled to summary judgment on counts IV and V.

**Plaintiff's state law claims**

This leaves plaintiff's state law claims.  Defendants move for summary judgment on plaintiff's state law claims on the basis that the arresting officers have statutory immunity under Ohio law.  Specifically, Ohio Revised Code §2744.03(A)(6) provides that an employee of a political subdivision is entitled to immunity from civil liability in his performance of a governmental function unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

Ohio Revised Code §2744.03(A)(6).

Defendants contend that plaintiff "has failed to present evidence creating a factual dispute" that the arresting officers here acted "with malice, bad faith, or in a wanton or reckless manner" within the meaning of §2744.03(A)(6)(b), the "only possible exception for consideration" to statutory immunity in this case.  (Def. Mem. at 15.)  They assert that there is no evidence that the officers acted out of ill will or intended to cause harm to the plaintiff.

In his opposition brief, plaintiff asserts that two possible exceptions to the immunity statute apply, Ohio Revised Code §2744.03(A)(6)(a) and (b).  Plaintiff argues that

19

> Officer Ramsey demonstrated complete indifference to the welfare of [plaintiff] throughout but especially when [plaintiff] asked him to do whatever he was going to do to address his wrist complaints and Officer Ramsey and Killiany did nothing. That is the definition of disregard and indifference.

(Pltf. Opp.at 20.)

Plaintiff's argument is insufficient to show, and plaintiff has failed to otherwise demonstrate facts in his opposition brief from which a reasonable jury could find, either that the arresting officers' conduct was manifestly outside of the scope of their employment or official responsibilities or that they acted with "malicious purpose, in bad faith, or in a wanton or reckless manner." Accordingly, the officers are immune from civil liability in connection with plaintiff's alleged state law claims.

**Conclusion**

For the reasons set forth above, none of plaintiff's alleged claims is sufficient to survive summary judgment. Accordingly, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

                                             /s/ Patricia A. Gaughan
                                            PATRICIA A. GAUGHAN
                                            United States District Judge

Dated: 4/18/13